UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAMAR FERREL,

       Plaintiff,

    v.

AIRBUS AMERICAS, INC., AND
AIRBUS S.A.S.,

       Defendants.

Civil Action No. 1:26-cv-00690-JHR-SLC

**STIPULATION AND ORDER
REGARDING ELECTRONICALLY
STORED INFORMATION PROTOCOL**

WHEREAS, Plaintiff Tamar Ferrel ("Plaintiff") and Defendants Airbus Americas, Inc. and Airbus S.A.S. ("Defendants") (Plaintiff and Defendants each individually a "Party" and collectively the "Parties") to the above-captioned action desire to enter into this Stipulation and Order Regarding Electronically Stored Information Protocol ("ESI Order") to facilitate the discovery process by governing the production of paper ("Hardcopy") documents and electronically stored information ("ESI") and the disclosure of privileged information under Federal Rule of Evidence 502;

WHEREAS, subject to any protective orders entered in this action, this ESI Order has the objective of facilitating the just, speedy, and inexpensive completion of the discovery of ESI and Hardcopy documents, and to promote, whenever possible, the early resolution of disputes regarding the discovery of ESI without this Court's intervention;

WHEREAS, nothing in this ESI Order shall limit any Party's right to seek or object to discovery as set out in any applicable rule or to object to the authenticity or admissibility of any Hardcopy document or ESI produced in accordance with this ESI Order;

WHEREAS, in the event the Parties encounter any issue with the disclosure of ESI pursuant to this ESI Order, including substantial delay in the attempted disclosure of ESI, the Parties reserve the right to amend this protocol with consent of the undersigned counsel for the

Parties, or through judicial intervention;

WHEREAS, the Parties acknowledge that this ESI Order does not affect the proper scope or subject matter of discovery, nor does it imply that documents or ESI produced under its terms are relevant or admissible;

WHEREAS, the Parties acknowledge that this ESI Order does not alter or expand the preservation obligations of any Party to this action, including the obligations conferred on the Parties under Federal Rules of Civil Procedure 23, 33, and 34;

WHEREAS, the Parties acknowledge that nothing in this ESI Order shall be interpreted to require the disclosure of Hardcopy documents, ESI, or other information any Party contends are protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection;

WHEREAS, the Parties have agreed to the manner in which written discovery will be conducted in this matter to minimize the burden to the Parties and the Court, the manner in which ESI will be searched and produced in this action, and that this protocol applies only to those productions that occur after the Court enters the ESI Order;

NOW THEREFORE, in light of these acknowledgements, and to facilitate the mutually agreeable manner in which written discovery will be conducted, ESI will be searched, and documents will be produced, good cause exists to enter an order governing the production of documents and ESI in this matter.

I.      DEFINITIONS

1.      **Custodian:** The person who has custody and control of a document(s).

2.      **Document Family:** Group of related documents, including parent and child documents.

3.      **ESI:** Computer-generated information or data of any kind that is stored in any medium from which information can be obtained directly or, if necessary, after translation into a reasonably usable form.

4.      **Metadata:** Information about ESI that is created by the file system or application embedded in the document or email and is sometimes modified through ordinary business use. Metadata of ESI describes, *inter alia*, how, when, and by whom ESI was received, created, accessed, and/or modified.

5.      **Native Format**: Format of ESI in the application in which such ESI was originally created.

6.      **OCR:** Optical character recognition technology used to read Hardcopy documents or electronic images of documents and output such documents to a searchable text format.

7.      **PDF:** Portable document format used to electronically present documents, including text formatting and images.

8.      **Producing Party:** A Party in the above-captioned matter that produces documents.

9.      **Receiving Party:** A Party in the above-captioned matter to whom documents are produced.

10.      **TIFF:** Tagged image file format; a computer file used for storing images.

II.    ESI

IT IS HEREBY ORDERED that the following terms and conditions will govern how the Parties and this Court will manage the production of Hardcopy documents and ESI during discovery in the above-captioned case:

1.      **No Designation of Discovery Requests:** The Producing Party shall identify the source(s) of any Hardcopy documents, including by Bates label, and ESI it produces (e.g., custodial

files or database productions), but need not identify the document request(s) to which a document may be responsive.

2.      **Inadvertent Production:** The production of privileged or work-product-protected documents, ESI, or information, whether inadvertently or otherwise, is not a waiver of the privilege or protection from discovery in this case, in any other federal or state proceeding, or in any arbitration or other alternative dispute resolution proceeding. This ESI Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained in this ESI Order is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

3.      **ESI Not Reasonably Accessible:** Any ESI that is not reasonably accessible is not subject to disclosure.  The Party making the assertion that the ESI is not reasonably accessible shall be prepared to specify facts supporting its contention.  If the Receiving Party nonetheless believes that the requested production is reasonably accessible, the Parties will meet and confer, in the presence of their respective e-discovery vendors or personnel, if needed, to address the need for the requested data and the burden and expense associated with producing such data, with the goal of minimizing any such burden and expense.  If the Parties cannot resolve the discovery dispute after a good faith attempt, the moving Party shall by Letter-Motion, as required by Local Rule 37.2, request a discovery conference with the Court. The Letter-Motion shall not exceed 1,050 words and shall include the requirements set forth in Section C.2. of Magistrate Cave's Individual Rules and Practices in Civil Cases.

4.      **Data Integrity:** The Producing Party may not reformat, scrub, or alter the ESI, including the metadata, to intentionally downgrade the usability of the data.

5.    **Artificial Intelligence and Document Review Tools:** Unless otherwise ordered by the Court or permitted in writing by the Producing Party, a Receiving Party shall not upload, submit, disclose, quote, feed, or otherwise provide any documents or information to any AI machine learning, language model, generative text, or similar technology or service (collectively, "AI Tool") unless the AI Tool: (i) is an enterprise-grade platform licensed by the Receiving Party or its counsel; (ii) is subject to a binding written agreement that (1) requires the provider to keep all user-supplied data strictly confidential and (2) expressly prohibits the provider from using such confidential data for training, fine-tuning, product improvement, or any purpose other than providing the contracted-for services; and (iii) employs technical and organizational security measures reasonably designed to prevent any unauthorized access, disclosure, or use of the Discovery Material. Nothing in this Paragraph shall prohibit a Receiving Party or its counsel from using an AI Tool that (i) is hosted on a secure, computing environment that is exclusively owned by the Receiving Party or its counsel, (ii) is inaccessible to any third party, and (iii) otherwise complies with the confidentiality obligations of the Parties' Protective Order.

6.    **ESI Search Methodology:** The Parties agree that they will cooperate in good faith regarding the disclosure and formulation of appropriate ESI search methodologies, search terms, custodians, and protocols to narrow the pool of collected documents to a set to undergo review for possible production. If the Producing Party intends to limit its collection and/or production of ESI to certain ESI sources and/or search terms, the Producing Party will provide the ESI sources, custodians, and search terms to the Receiving Party and will meet and confer to reach agreement regarding the search terms to identify potentially relevant information. The Parties agree that documents will be produced on a rolling basis during the discovery period. The Parties will continue to meet and confer regarding any search process issues as necessary and appropriate.

Nothing in this protocol, or the subsequent designation of any search terms, shall operate to limit a Party's production obligations under applicable law, or the Parties' ability to agree to meet and confer to modify the search terms, criteria, or methodologies as information is obtained and utilized in the course of the litigation. Further, nothing in this protocol shall limit a Party's ability to collect or produce documents, including ESI, by targeted collection that does not rely on search terms.

7. **General Production Requirements**

a. **Production in a Reasonably Usable Format:** The Parties shall produce Hardcopy documents and ESI in a reasonably usable format. Except for ESI to be produced in native format, namely: (1) audio/video (e.g., .wav, .mpeg, .avi) and (2) spreadsheet files (e.g., Excel), such reasonably usable format shall be TIFF images, with extracted text and associated metadata as set forth below and in Attachment A. If the Receiving Party, for good cause, seeks production in native format of specifically identified ESI that was produced originally in TIFF format, the Producing Party shall respond reasonably and in good faith to any such request.

b. **Redactions:** Any redactions shall be clearly indicated on the document. For native Excel files requiring redaction, the Producing Party shall redact by overwriting the data contained in a particular cell, row, column, or tab with the word "REDACTED," or may image the document and apply redactions to the images if necessary. All redacted documents will be identified as such within the "REDACTED" field in the .DAT file.

c. **Color/Black and White:** Color originals may be produced in black and white TIFF format or as single page JPEGs but for good cause, either Party may subsequently request a replacement set of images in color to the extent the Requesting Party finds that the loss of color reduces the ability to understand information imparted on the original.

d.    **Production Format of ESI:** The Parties agree that ESI shall be produced as follows:

i.    **Images:** Single page .TIFF images or single page .JPEGs for color documents only.  Each image shall contain a "burned in" footer with a sequentially ascending production alpha-numeric Bates number in the lower right corner and, if applicable, the appropriate confidentiality designation in the lower left corner.

ii.    **Natives:** Audio/video files  (e.g., .wav, .mpeg, .avi), and spreadsheet-type files (e.g.,  Microsoft Excel and CSV files) will be produced in their native format and named according to the beginning Bates number and, if applicable, the appropriate confidentiality designation (e.g., "ABC00001 CONFIDENTIAL" or "00001 HIGHLY CONFIDENTIAL"). A Bates-stamped single placeholder TIFF labeled "Document Produced in Native Format" and, if applicable, the appropriate confidentiality designation of the record will also be produced for each native record.

iii.    **Text:** Document-level extracted text files or OCR text files, for Hardcopy or redacted records, will be provided.

iv.    **Data Load File:** a standard delimited .DAT file containing document-level text files, the fields listed in Paragraphs 9–10 below, and Attachment A.

8.    **Production Format of Hardcopy Documents:** Custodial documents that  in the normal course of business, exist only in Hardcopy form shall be scanned and produced in accordance with the procedures set forth below and in Attachment A.  Hardcopy documents should be scanned in a manner which retains the original organization of the Hardcopy documents. Hardcopy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., .dat). The production load

file should contain the fields ("Production Fields") identified in Paragraph 8 below. The Parties will make reasonable best efforts to ensure that Hardcopy documents are logically unitized when scanned. Color originals may be scanned in black and white ("B&W"), but either Party may subsequently request, by Bates number(s), a replacement set of images in color if the Requesting Party intends to use the document(s) in a filing, deposition, or at trial, or if the loss of color reduces the document(s) usability or the ability to understand information imparted in the original. To the extent the Producing Party OCRs the document for its own benefit, OCRed text should be produced.

9.     **Production Fields:**  The Parties agree to produce the following Production Fields for all documents and information produced in electronic format, including documents that were originally in Hardcopy and ESI:[1]

| Field Name | Field Description |
| --- | --- |
| BEGBATES | Beginning Bates number |
| ENDBATES | Ending Bates number |
| BEGATTACH | Beginning Bates number for a parent/child package |
| ENDATTACH | Ending Bates number for a parent/child package |
| GROUP IDENTIFIER | Identifier for a document's family group |
| PAGES | The number of pages in a document. For documents produced in native format, the page count will indicate 1 page |
| CUSTODIAN | Name of the Custodian associated with a record |
| ALL_CUSTODIANS | Names of All Custodians associated with a record where documents have been removed as a duplicate |
| CONFIDENTIALITY | Field indicating that a document is "Confidential" or "Highly Confidential" |
| REDACTED | "Yes" should be populated if a document contains redaction |
| EXTRACTED/OCR TEXT | Path and filename for extracted or OCR text |

---

[1]     The Parties agree that the specific Field Name provided herein and in Attachment A are for examples only. Any Party may use a substantially similar Field Name for the relevant data.

10.     **ESI Metadata Fields:**  The Parties agree to provide the following fields of metadata for all documents and information produced in electronic format to the extent such metadata exists and can be reasonably retrieved:

| Field Name | Field Description |
| --- | --- |
| RECORD TYPE | A document's record type (i.e., E-Mail Attachment, or E-Doc) |
| EMAIL SUBJECT | Subject of an e-mail message |
| FROM | Email sender |
| TO | Main recipient(s) of an e-mail message, by email address |
| CC | Recipient(s) of "Carbon Copies" of an e-mail message |
| BCC | Recipient(s) of "Blind Carbon Copies" of an e-mail message |
| SENT DATE | Date an email was sent |
| SENT TIME | Time an email was sent |
| IMPORTANCE | Email importance flag |
| DATE LAST MODIFIED | Last modification date of a non-email document |
| TIME LAST MODIFIED | Last modification time of a non-email document |
| TITLE | Extracted document title of a record |
| FILENAME | Original filename of native file. Contains the subject of e-mail message for e-mail records |
| FILE EXTENSION | File extension of a native file |
| FILE TYPE | File type of a record (e.g., MS Excel Spreadsheet) |
| AUTHOR | Author field from metadata of a native file |
| HIDDEN CONTENT | Yes/No to indicate if image produced should show any hidden data |
| HIDDEN TYPE | Identification of the type of hidden data the produced image should show (e.g., comments, tracked changes) |
| FILE SIZE | Size of file in bytes |
| TIMEZONE | Three letter reference of time zone where record was processed (e.g., CST) |

11.     **ESI Date and Time Processing:** To the extent reasonably practicable, a Producing Party shall produce ESI with a uniform time zone.

9

12.    **Duplicates:**  The Producing Party need produce only a single copy of responsive duplicate ESI.  A Producing Party shall take reasonable steps to de-duplicate ESI globally (i.e., both within a particular Custodian's files and across all Custodians).  De-duplication shall not break apart families and shall be performed at a family level.  Removal of duplicate electronic documents should only be done on exact duplicate documents, based on MD5 or SHA-1 hash values, and at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. De-duplication should be done across the entire collection (i.e., global level) and the ALL_CUSTODIANS field should list each Custodian, separated by a semicolon, that was a source of the document. The CUSTODIAN field shall represent the Custodian of the document uploaded to the review platform. Hardcopy documents may be de-duplicated provided all contents of the document, including all hand-written notes, are identical.

13.    **Transfer of Production Files:**  Productions of ESI and Hardcopy documents shall be provided to the opposing Party via Secure File Transfer Protocol ("SFTP"). If a particular production is too large to be sent via SFTP, the Parties will consider reasonable requests to provide individual productions to the opposing Party via an encrypted CD, DVD, hard drive, or other electronic media.

14.    **Privilege and Privilege Logs:** The Parties agree that, for documents redacted or withheld from production on the basis of attorney-client privilege or the work product doctrine, the Producing Party will provide a log of the privilege material for each production, in an electronically searchable format (e.g., Excel), containing—in a manner that, without revealing information that is itself privileged or protected, will enable other Parties to assess the claim—a

description of the nature of the documents, communications, or tangible things not produced or disclosed for each document being claimed as privileged.

        a.        The Parties agree that no Party is required to log any privileged or work product documents, including ESI, to the extent such documents and ESI are dated on or after the date of the filing of the Complaint and either (i) involve the Party's corporate counsel or outside counsel, or (ii) were created at the direction of a Party's corporate counsel or outside counsel, an agent of outside counsel other than the Party, any non-testifying expert(s) in connection with specific litigation, or, with respect to information protected by Federal Rule of Civil Procedure 26(b)(4), any testifying expert(s) in connection with specific litigation.

        b.        The Parties agree that activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Federal Rule of Civil Procedure 26(b)(3)(A) and (B) and need not be logged.

        c.        For each document withheld or redacted on the basis of privilege or work product, the privilege log shall contain the following: (i) the date the document was created; (ii) the identity of all persons who sent, authored, signed, or otherwise prepared the document; (iii) the identity of all persons designated as addressees or persons who were copied, including blind copied; (iv) a description of the contents of the document that, without revealing information that is itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or protection; (v) the type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc.); (vi) for redacted documents, the Bates number(s) corresponding to the first page of the redacted document; and (vii) for mixed family documents (i.e., where some family members are produced, and other family members are

11

withheld with a Bates-numbered slip sheet provided), the Bates number(s) corresponding to the slip sheet produced.

15.     **Redaction of Trade Secret, PII, and Non-Responsive Information**

a.     **Trade Secrets:** A Party may redact documents, as appropriate, that contain Trade Secrets or other Sensitive Business Information unrelated to the claims or defenses asserted in this litigation. Examples of Trade Secrets or other Sensitive Business Information include non-public, commercially sensitive, proprietary information, or trade secrets whose value is derived, at least in part, from its secrecy or otherwise not being known to others, including, for example, customer and pricing lists, valuable research, development, commercial, financial, technical, marketing, and/or proprietary information. Any such redactions shall be described concurrently with the production with language explicitly conveying the specific justifications for the redaction, a detailed explanation as to why the Party believes the "Highly Confidential" designation under the Protective Order provides inadequate protection, and shall comply with the requirements of Paragraph 7(b) above.

b.     **Personal Identifying Information**: A Party may redact documents containing Personal Identifying Information ("PII") to  the extent necessary to comply with obligations under federal, state, and/or foreign data protection laws, including without limitation, Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the Protection of Natural Persons with Regard to the Processing of Personal Data and on the Free Movement of Such Data ("General Data Protection Regulation" or "GDPR"). Any such redactions shall include identifying language that conveys the reason for the redaction and comply with the requirements of Paragraph 7(b) above.

c.  **Relevance:** A Party may redact documents, as appropriate, which contain information that is not relevant to a claim or defense in this litigation. Any such redactions shall include identifying language which convey the reason for the redaction and comply with the requirements of Paragraph 7(b) above.

16.  **Resolution of Disputes:** The Parties agree to meet and confer in good faith regarding matters related to written discovery and the production of data not specifically set forth in this ESI Order, the interpretation of this Order, or the Parties' obligations under this ESI Order. The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this ESI Order. If, after a good faith attempt, the Parties are unable to reach resolution regarding any dispute concerning the interpretation of this ESI Order or compliance with same. The Parties shall submit any disputes to the Court pursuant to the Court's Individual Practices for discovery disputes.

17.  The next scheduled conference with the Court for purposes of updating the Court on electronic discovery issues has been scheduled for **August 5, 2026 at 10:00 a.m. ET** (Dkt. No. 16)_____. Additional conferences, or written status reports, shall be set every **four (4) weeks**, as determined by the Parties and the Court, based on the complexity of the issues at hand. ~~An agenda should be submitted to the Court four (4) days before such conference indicating the issues to be raised by the Parties~~. The Parties may jointly seek to adjourn the conference with the Court by Letter-Motion at least **48 hours** in advance of a scheduled conference if the Parties agree that there are no issues requiring Court intervention.

By **July 31, 2026**, the parties shall file a joint letter advising the Court on the status of discovery and identifying any issues ripe for the Court's attention. (Dkt. No. 16).

18.  **Modifications:** Unless expressly stated herein, nothing in this ESI Order shall affect the Parties' discovery obligations under the Federal Rules or the Local Rules of this Court.

Further, each Party retains the right to seek modification from the Court regarding any of the terms herein.

      Dated:      New York, New York

             May 26   , 2026

                            SO ORDERED

                            _____

                            **SARAH L. CAVE**
                            **United States Magistrate Judge**

**ATTACHMENT A**

1.  **IMAGES:**

    - **Format:** Single Page Group IV TIFF or single page JPEGs for color files only
    - **Resolution:** At least 300 DPI
    - **Color/Black and White**: Black and white unless color is necessary to understand the meaning
    - **File Naming Convention:** Match Bates Number and end with .tif or .tiff extension
    - **Placeholder:** Insert placeholder image for files produced in Native form, withheld for privilege, or that could not be imaged (e.g., corrupted files)
    - **Originals:** Retain original document orientation

2.  **FULL TEXT EXTRACTION/OCR:**

    - **Format:** Full extracted text for all file types of ESI (Redacted text will not be produced)
    - **Production format:** Single text file for each document, not one text file per page
    - **File Naming Convention:** Match Beg Bates Number and end with .txt extension
    - **OCR:** Produce OCR text files for Hardcopy documents

3.  **LOAD FILE SPECIFICATIONS:**

    - **Images Load File:** Opticon OPT file
    - **Metadata Load File:** Concordance DAT file with field header information added as the first line of the file.  Export using Concordance default delimiters
    - **Extracted TEXT:** Reference File Path to TEXT file (extracted text or OCR) in DAT file
    - **Native Files Produced:** Reference File Path to Native file in DAT file

4.  **ESI PRODUCTION METADATA FIELDS (In addition to the fields in No. 5 below):**

    - **Record Type:** Document Type (i.e., Email, Attachment, Edoc)
    - **EmailSubject:** Subject line extracted from an email message
    - **From:** From field extracted from an email message
    - **To:** To or Recipient field extracted from an email message
    - **CC:** CC or Carbon Copy field extracted from an email message
    - **BCC:** BCC or Blind Carbon Copy field extracted from an email message
    - **DateSent:** Sent date of an email message (mm/dd/yyyy format)
    - **TimeSent:** Sent time of an email message, with time zone set to time zone identified in TimeZone field
    - **Importance:** Email importance flag
    - **DateLastModified:** Last modification date of a non-email document
    - **TimeLastModified:** Last modification time of a non-email document
    - **Title:** Title field extracted from the metadata of a non-email document
    - **FileName:** Filename of the original digital file name
    - **Extension:** File extension of email or non-email document
    - **FileType:** The file type of the record (e.g., MS Excel)

15

- **Author:** Author field extracted from the metadata of a non-email document
- **HiddenContent:** Yes/No to indicate if image produced should show any hidden data
- **HiddenType:** Identifies type of hidden data (e.g., comments, hidden sheets, hidden slides, speaker notes, tracked changes) the produced image should show
- **File Size:** Size of the file in bytes.
- **TimeZone:** Three letter reference of time zone the record was processed in (e.g., UTC)

5. **PRODUCTION FIELDS (ALL DOCUMENTS):**

- **BegBates:** Beginning Bates Number
- **EndBates:** Ending Bates Number
- **BegAttach:** Beginning Bates number of the first document in the document family
- **EndAttach:** Ending Bates number of the last document in the document family
- **Group Identifier:** Identifier of a document's family group.
- **Pages:** Number of pages of a document. For documents produced in native format, the page count will indicate 1 page
- **Custodian:** Name of the Custodian or Source of the File(s) Produced - Last Name, First Name Format
- **All_Custodians:** Names of All Custodians associated with the record where the documents have been removed as a duplicate
- **Confidentiality:** Field indicating that the document is "Confidential" or "Highly Confidential"
- **Redacted:** "Yes" should be populated if document contains redaction
- **Extracted/OCR Text:** Path and filename to extracted or OCR text

6. **CONFIDENTIALITY DESIGNATIONS:** Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file. For native files, confidentiality designations will be endorsed on the lower left corner of all slip sheets inserted.

7. **PARENT-CHILD RELATIONSHIPS:** Parent-child relationships (e.g., the association between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to No. 3 above. Embedded or hyperlinked data (except logos, letterheads or backgrounds) on a file shall be treated as attachments.

8. **DYNAMIC FIELDS:** Files containing dynamic fields (e.g., file names, dates, and times) will be produced showing the field code (e.g., "[FILENAME]" or "[AUTODATE]") rather than the values for such fields existing at the time the file is processed.

9. **ENGLISH LANGUAGE:** To the extent any native data exists in more than one language, the data will be produced in English, if available. If no English version of a file is available, the Producing Party shall not have an obligation to produce an English translation of the data.

10. **ENCRYPTED FILES:** The Producing Party will take reasonable steps, prior to production, to decrypt any discoverable ESI that exists in encrypted format (e.g.,

password-protected) and can be reasonably decrypted or provide a working password for each encrypted file.

11.  **ARCHIVE FILE TYPES:** Archive file types (e.g., .zip, .rar) shall be extracted for processing. Each file contained within an archive file shall be produced, and the reference to the parent archive file provided in the child file name. If the archive file is itself an attachment, that parent/child relationship shall also be preserved.

12.  **HIDDEN CONTENT AND TRACK CHANGES:** Hidden content, tracked changes or edits, comments, notes and other similar information viewable within a native file shall also be imaged if a file is produced as an image.

13.  **PRODUCTION NUMBERING:** The Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each TIFF image will have its assigned production number electronically "burned" onto the image.

14.  **FILES PRODUCED IN NATIVE FORMAT:** Any electronic file produced in native format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation, and end with the appropriate file extension. The original file name will be identified in the Load File. For each native file produced, the production will include a TIFF image slip sheet indicating the production number of the native file and the confidentiality designation, if any, and labeled "Document Produced in Native Format" (or similar).

15.  **PRODUCTION MEDIA:** Unless otherwise agreed, productions will be provided via a secure FTP site. Each production set should have an alphanumeric volume name. Volumes should be numbered consecutively (e.g., ABC001, ABC002, etc.). Physical media should be labeled with the name of this action, the identity of the Producing Party, and the following information: volume name, production range(s), and delivery date.